State, Peters, Pros., v. Mayor and Council of Newark.

---

THE STATE, HORATIO N. PETERS, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK.

1. An assessment of land for benefits acquired by an owner from the opening of a new street in the city of Newark, held good, although the common council made no previous designation of what land was intended to be benefited.

2. The advertisement required to be published by the commissioners, that their report had been deposited with the clerk, &c., must set forth so much of that report as will show what land was assessed and who are the owners.

3. An assessment of the land, as if it was all unimproved, held correct.

This was a *certiorari* bringing up an assessment against the prosecutor, and was argued before Justices VAN DYKE, ELMER and BEDLE, by *A. S. Hubbell*, for the prosecutor, and by *W. B. Guild*, for the city.

The opinion of the court was delivered by

ELMER, J. On the sixth day of April, 1860, certain owners of property fronting on Parkhurst street, in the city of Newark, presented a petition to the common council, requesting that body to lay out and open said street from South Broad street to Tichenor's lane. On the 5th day of October the committee on streets reported a resolution, which was passed, whereby it was resolved that it was the intention of said council to cause said street to be opened, and whereby the street commissioner was directed to give public notice as required by the charter, of said intention, requesting such persons as may object thereto, to present their objections in writing, on or before the expiration of twenty days from the date of such notice. The ordinance to make this improvement was finally passed, and approved by the mayor November 17th, 1860.

Commissioners were afterwards appointed to assess the damages sustained by the owners of the property taken for the street, who performed that duty; and the council having ascertained and determined that the costs, damages, and expenses incurred in opening said street amounted to $6077.36, the said commissioners were directed to make a just and equitable assessment thereof, upon the owners of all the lands and real estate intended to be benefited by the opening of Parkhurst street, in proportions as nearly as might be, to the advantage each should be deemed to have acquired.

No designation of what property was intended to be benefited, was made by the council at any stage of the proceedings; but the commissioners being duly sworn, proceeded to ascertain and determine that question, and they made a report and certificate, in writing, of their intended assessment, assessing sixty-two different parcels of land, owned by nearly

as many different persons, and including therein the sum of $426.70, assessed to the prosecutor, which they placed in the office of the city clerk on the 18th day of December, 1863. They thereupon published a notice for ten days in two of the city newspapers, that such report had been deposited, and of the time and place when and where the parties interested would be heard. This notice did not contain the names of the owners who were assessed, or any description of the property for which they were assessed, except a statement that the said assessment comprised all lots, tracts and parcels of land and real estate, liable to the assessment aforesaid, lying upon certain streets and parts of streets named and designated, upon one of which the land of the prosecutor was situate, not however a part of Parkhurst street, nor was he one of the petitioners for the opening of the same.

Upon the day mentioned in said notice and on several subsequent days, the commissioners met and heard such of the persons as presented themselves, and January 21st, 1864, they made and signed their final report and assessment. The same having been by the council in due manner referred to a committee and reported on, was duly ratified March 8th, 1864. The prosecutor did not appear, and he testifies, that although he took one of the newspapers in which the notice was published, he had no knowledge of the assessment against him until he received a notice to pay it, after the final ratification.

Three reasons have been mainly relied upon for reversing this assessment against the prosecutor, which will be separately noticed.

*First.* It was insisted that the council, either before the original ordinance for opening the street was passed, or before the commissioners were required to assess for benefits, was bound to designate the land and real estate "intended to be benefited." This is not required by any express provision of the charter; nor do I think any such proceeding was made necessary to carry into effect its reasonable object. The notice of the intention to introduce an ordinance to open

the street, was in express terms required by the 97th section of the charter, *Acts of* 1857, *p.* 163, to briefly describe the improvement, and this it did by designating from and to what point the street was proposed to be opened.   The 105th section provides that the council shall ascertain the whole amount of the costs, damages, and expenses, and shall cause to be made a just and equitable assessment thereof, upon the owners of all the lands and real estate intended to be benefited thereby.   This assessment is to be made by commissioners, who are to report to the council, and by the 111th and 112th sections, the council is required to refer the report to the proper committee for consideration ; and in case of any objection in writing being returned with such report, the said committee is required to publish a notice of the time and place, when and where they will meet to hear the party objecting, and then to return the said report, with the objections, together with the views and opinions of the committee ; and then the council is to examine the matter, and may correct said report and ratify the same, or send it back to the commissioners, to be returned and passed upon in like manner.   By this proceeding the council did finally determine what land and real estate was intended to be benefited, after having had far better means of judging correctly, and in my opinion more in accordance with the true intent and meaning of the charter, than was practicable at any previous stage of the proceedings.

The *second* reason insisted on was, that the notice published in the newspapers by the commissioners, after they had filed their report with the city clerk, was not sufficient; and in my opinion, this objection was well taken and is fatal to the assessment.   It is fully settled by the opinion of this court and of the Court of Errors, that in every proceeding affecting the property of individuals, the owners are entitled to full and fair notice of the proceedings.   *The State* v. *Jersey City,* 4 *Zab.* 666 ; *Vantilburgh* v. *Shann,* 4 *Zab.* 740.   If the statute regulating the proceeding, substitutes a notice by advertisements published in a manner prescribed, for a per-

sonal notice, such a substitute will of course be held sufficient; but it must be very plain language which will justify the court in holding that the legislature meant to substitute, by way of a published advertisement, anything less explicit than would be required in a written notice, actually delivered to the person whose property was meant to be affected. Section 108 of the charter in question provides that the commissioners shall give notice in two newspapers that such report has been deposited, &c. What, then, is meant by a notice "that such report has been deposited?" It cannot mean merely that the commissioners should publish a notice in general terms that they had filed a report of the assessments on land, &c., intended to be benefited by opening Parkhurst street; nor did the commissioners so understand it, for they undertook to give some indication of what land they had assessed. The language of this 108th section is very different from that of the 97th, which requires only a brief description of the work or improvement proposed.

In my opinion, the commissioners were required to include in their published notice the report itself, or at least so much of it as designated not only what land was assessed, but against what persons, as owners thereof, the assessments were made. Nothing less than this was a notice what report was made; and nothing less could be a compliance with the reasonable design of the advertisement. Only the parties actually named are entitled to be heard before the commissioners; and only such parties could make objections in writing, to be returned with the assessment to the council, by it to be referred to the committee; and only the parties making such written objections could be heard before the committee or have their objections considered by the council.

A *third* objection urged was, that the commissioners adopted an erroneous principle in estimating all the property assessed, as if it was unimproved, whereas some of it was, in fact, improved by having on it valuable buildings. I am not satisfied, however, that the commissioners were wrong in this. The advantage an owner of property acquires by the

opening of a new street in a city, must be mainly if not wholly the advanced value of the land. The buildings on it will cost very nearly or quite the same without as with the improvement. The common practice in like cases is believed to have been the same as that adopted by these commissioners; and this is of itself no slight reason for supposing it to be correct. No evidence has been laid before us in this case, showing it to have produced any injustice to the prosecutor.

For the second reason above noticed, the assessment complained of must be reversed and set aside.

Assessment set aside.

CITED in *State, Kellog, pros.*, v. *City of Elizabeth*, 8 *Vroom* 357 ; *State, Woodruff, pros.*, v. *City of Elizabeth*, 10 *Vroom* 55 ; *State, Trumbull, pros.*, v. *City of Elizabeth*, 10 *Vroom* 250 ; *State* v. *Mayor and Aldermen of Jersey City*, 6 *Vroom* 408 ; *State, Boice, pros.*, v. *Plainfield*, 12 *Vroom* 140 ; *Kean* v. *Asch*, 12 *C. E. Green* 60.